UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ORMOND COUNTRY CLUB | * | CIVIL ACTION |
| VERSUS | * | NO: 06-11376 |
| JAMES RIVER INSURANCE COMPANY | * | SECTION: "D"(3) |

### ORDER AND REASONS

Before the court is the **"Motion for Partial Summary Judgment" (Doc. No. 33)** filed by Defendant, James River Insurance Company (James River). Plaintiff, the Ormond Country Club (Ormond), filed a memorandum in opposition.[1] The motion was set for hearing on Wednesday, March 26, 2008, on which date the court heard oral argument from counsel. Having considered the memoranda and argument of counsel, the record, and the applicable law, the court finds that there is no genuine issue of material fact and Defendant is entitled to partial summary judgment as a matter of law.

---

[1] While Plaintiff filed a memorandum in opposition, Plaintiff failed to "include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried." LR 56.2E. Thus, "all material facts set forth in the statement required to be served by the moving party [here, James River] will be deemed admitted, for purposes of the motion ..." *Id.*

Notwithstanding Plaintiff's failure to file a statement of the material facts as to which there exists a genuine issue to be tried, it does not appear from the record that there is any dispute as to the material facts set forth by Defendant in its "Statement of Uncontested Facts" (Doc. No. 33-3).

## I. Background

James River issued Ormond a commercial insurance policy, Policy No. 00006816-0, for the period October 21, 2004 to October 21, 2005. (*See* Policy, attached to Defendant's Memorandum as Doc. No. 33-7). On or about August 29, 2005, Hurricane Katrina hit the New Orleans area, allegedly causing wind and wind driven rain damages to Ormond.[2] In this suit, Ormond seeks damages allegedly covered under the subject policy issued by James River. However, in the instant motion, Defendant James River maintains that the following alleged damages are not covered:

(1) $753,000 in property damage to Ormond's 130-acre golf course;

(2) $200,000 in business interruption damages attributable to loss of use of the golf course;

(3) $68,038 in property damage to outdoor swimming pool(s);

(4) $12,610 in property damage to a fence surrounding the swimming pool(s); and

(5) $4,820 in property damage to outdoor tennis courts.

The court agrees, as discussed below.

## II. Legal Analysis

---

[2] Ormond did not sustain any damage due to flood waters.

According to the Declarations Page of the subject policy, certain building coverage was provided to the club house, a storage building, a poolside cabana, a pumphouse and two course shelters. (*See* Policy, Dec. Page, Doc. No. 33-7, at p. 2 of 55).

Further, the Building and Personal Property Coverage Form incorporated into the policy, provides:

> A.   COVERAGE
>
> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
>
> **1.   Covered Property**
>
> Covered property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations:
>
> a.   Building, meaning the building or structure described in the Declarations, including:
>
> (1) Completed additions;
>
> (2) Permanently installed:
>
> (a) Fixtures;
>
> (b) Machinery; and
>
> (c) Equipment;
>
> (3) Outdoor fixtures;
>
> (4)  Personal   property

>> owned by you that is used to maintain or service the building or structure or its premises ...
>
> . . .
>
> **2. Property Not Covered**
>
> Covered Property does not include:
>
> . . .
>
> d. Bridges, roadways, walks, patios or other paved surfaces,
>
> . . .
>
> h. Land (including land on which property is located) ... or lawns;
>
> . . .
>
> m. Underground pipes, flues or drains;
>
> . . .
>
> p. The following property while outside of buildings:
>
> . . .
>
> (2) Fences ... trees, shrubs or plants, all except as provided in the Coverage Extensions.
>
> **5. Coverage Extensions**
>
> Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a

>>vehicle) within 100 feet of the described premises.
>
>>. . .
>
>>e. You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas, signs (other than the signs attached to the buildings), trees, shrubs and plants, including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Losses:
>
>>>(1) Fire;
>>>
>>>(2) Lightning;
>>>
>>>(3) Explosion;
>>>
>>>(4) Riot or Civil Commotion; or
>>>
>>>(5) Aircraft.
>
>>The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant.
>
>>Each of these Extensions is additional insurance. The Additional Condition, Coinsurance, does not apply to these Extensions.

(*See* Policy, Doc. No. 33-7, pp. 11-14 of 55).

### *The Golf Course*

The **golf course** is not listed in the policy declarations. Thus, damages to the golf course are not covered. *Halpern v.*

5

*Lexington Ins. Co.*, 558 F.Supp. 1280 (E.D.La.), *aff'd*, 715 F.2d 191 (5th Cir. 1983)(building not listed in the declarations not covered); *In re McDermott*, 875 So.2d 863 (La. App. 4th Cir. 2004)(personal property not shown on declarations page not covered); *Soundview Associates v. New Hampshire Ins. Co.*, 215 A.D.2d 370, 625 N.Y.S.2d 659 (1995)(golf course not listed in the declarations pages of policy not covered).

Further, in addition to not being listed in the declarations, the golf course is also excluded from coverage because elsewhere, the policy unambiguously states that "Covered property does not include ... [l]and (including land on which the property is located) ... or lawns." (*See* Policy, Doc. No. 33-7, p. 12 of 55).[3] Indeed, Plaintiff does not even argue in its opposition that the golf course is covered under the policy's "Building and Personal Coverage Form."

### *Business Interruption*

According to the Declarations, of the covered buildings only the clubhouse has coverage for business interruption. (*See* Policy, Doc. 33-7, Declarations, p. 3 of 55).  In its answers to interrogatories, Plaintiff submits that:

---

[3] *See also Soundview Associates v. New Hampshire Ins. Co.*, 215 A.D.2d at 371, 625 N.Y.S.2d at 661 (golf course as "land" not covered); *Horning Wire Corp. v. Home Indemnity Corp.,* 8 F.3d 587 (7th Cir. 1993)(land unambiguously excluded from coverage).

6

> With respect to business interruption, Ormond has ... been underpaid for that loss. To date, Ormond has been paid only $82,501.00 for business interruption losses. However, Stan Eilers, Ormond's Treasurer, submitted reports to James River showing that Ormond should have received at least $102,676.00 which is a difference of $20,175.00 on the business interruption claim. In addition, Ormond has since had to close the golf course to make repairs as a result of Katrina damages to the greens. While it has not yet been precisely calculated, Ormond anticipates a business interruption loss of approximately $200,000.00.

(*See* Plaintiff's Answer to Interrogatory No. 14, Doc. No. 33-6, p. 13 of 20).

According to the policy:

> [Business Income] Coverage is provided as described and limited below for one or more of the following options for which a Limit of Insurance is shown on the Declarations:
>
> . . .
>
> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at **premises** which are described in the Declarations **and for which a Business Limit of insurance is shown in the Declarations.**

(*see* Policy, Doc. No. 33-7, p. 47 of 55, emphasis added).

Thus, because the golf course is not even scheduled for coverage in the Declarations and business income coverage is only

for the club house, the court concludes that business interruption damages attributable to closure of the golf course are not covered.

The court rejects Plaintiff's argument that the use of the word "premises" in the above quoted language can be read broadly to include the golf course (and thus the golf course is covered for business interruption). Such an expansion of the business interruption coverage to include loss of use of the golf course would render the Declarations meaningless.[4] The court also is unpersuaded by Plaintiff's argument that the use of the word "premises" renders the policy ambiguous.

### *The Swimming Pools and Their Pumps*

Again, according to the Declarations, the club house, the pump house and the poolside cabana are listed as covered. But the swimming pools are not listed in the Declarations, and they are not mentioned elsewhere in the policy. Thus, the court concludes that Plaintiff is not entitled to recover damages related to the swimming pools and their pumps.

---

[4]  Plaintiff further argues that: "Ormond does not differentiate between the business interruption losses attributable to the loss of use of the golf course from those that were sustained as a result of the damage to the club house." (Plaintiff's Opp., Doc. No. 41, at p. 3 of 9). However, the court finds that any business income loss from loss of use of the golf course cannot be included in the business income loss from loss of use of the club house.

Further, in light of Plaintiff's answer to Defendant's Interrogatory No. 14, it appears that Plaintiff has indeed differentiated between the business interruption losses attributable to the loss of use of the golf course from those that were sustained as a result of the damage to the club house. Again, Ormond admits that it has been paid $82,501.00 for business interruption loss, and according to Defendant, such losses are attributable only to *loss of use of the club house*. From the wording of Plaintiff's answer to Interrogatory No. 14, it also appears that Plaintiff anticipates a business interruption loss of approximately $200,000 *due to closure of the golf course*.

The court also is unpersuaded by Plaintiff's argument that the swimming pools should be covered as "outdoor fixture[s]" or "completed additions" (and the pools' pumps as "personal property") as those terms are used in the description of "Covered Property" (*infra*, p. 3).[5] An "outdoor fixture" or "completed addition" is covered, but only if it is a part of a building listed in the Declarations.  While Plaintiff contends that the swimming pools should be considered fixtures or additions of the clubhouse (which is a scheduled building in the Declarations) because of the close proximity of the pools to the clubhouse, Plaintiff offers no summary judgment evidence to support such proximity.  And even if there was evidentiary support of close proximity, there is no showing of a substantial connection of use of the clubhouse and use of the pools that would render the swimming pools structural parts (either as outdoor fixtures or completed additions) of the clubhouse.

Further, "personal property" is covered but only if it is "used to maintain or service the building or structure or its premises."  Thus, the court concludes that expansion of coverage to include the swimming pools as "outdoor fixture[s]" or "completed addition[s]" and/or to include the swimming pools' pumps as

---

[5] *See Joseph E. Bennett Co., Inc. v. Fireman's Fund Ins. Co.*, 344 Mass. 99, 181 N.E.2d 557 (1962)(country club's swimming pool not an "addition" within policy coverage provision).

"personal property" would render the Declarations meaningless.[6] Finally, the court rejects Plaintiff's argument that there is ambiguity in the use of the term "outdoor fixture" and/or "completed addition."

### *Fence (Surrounding the Swimming Pool) and Tennis Courts*

To the extent that the fence (surrounding the swimming pool) and tennis courts are not listed in the policy Declarations, they cannot be considered part of any building that is listed in the Declarations. And to the extent that Plaintiff argues that the fence and tennis courts should be considered "outdoor fixture[s]" or "completed addition[s]" under the policy's "Building and Personal Coverage Form," the court rejects such an argument because the fences and tennis courts are not a part of any building listed in the Declarations. The court rejects Plaintiff's argument that at the very least there is ambiguity in the use of the terms "outdoor fixture" and/or "completed addition."

Further, the policy provides that "Covered Property" does not include "fences" ... "except as provided in the Coverage Extensions." (*Id*. at p. 12 of 55). Under the "Coverage

---

[6] The court does not reach Defendant's other arguments that the swimming pools are not covered because: the policy also excludes coverage of damage caused by a power failure occurring away from the insured's premises; and the policy "does not cover any loss, damage, claim, cost, expense, removal, restoration or other sum either directly or indirectly arising out of or relating to, and/or contributed to, in whole or in part, by ... algae." (See Policy, Doc. No. 33-7 pp. 29, 36-37 of 55).

Extensions," the insured is allowed to extend coverage to outdoor property, including fences, but the fence must be located within 100 feet of an insured building.  (*Id*. at p. 13 of 55).  Further, the damage to the fence must be caused by one of five specific causes, including fire, lightning; explosion; riot or civil commotion; or aircraft.  (*Id*. at p. 14 of 55).  Windstorm is not a listed cause of damage.

Accordingly;

**IT IS ORDERED** that the **"Motion for Partial Summary Judgment" (Doc. No. 33)** filed by Defendant, James River Insurance Company, be and is hereby **GRANTED**, dismissing Plaintiff's claims for the following damages:

(1) $753,000 in property damage to Ormond's 130-acre golf course;

(2) $200,000 in business interruption damages attributable to loss of use of the golf course;

(3) $68,038 in property damage to outdoor swimming pool(s);

(4) $12,610 in property damage to a fence surrounding the swimming pool(s); and

(5) $4,820 in property damage to outdoor tennis courts.

New Orleans, Louisiana, this **27th** day of **March, 2008**.

```
                          _____
                                  A.J. McNAMARA
                          UNITED STATES DISTRICT JUDGE
```